UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DONALD TETER,

                     Plaintiff,

       -against-

MISONIX., and SHARON KLUGEWICZ,

                Defendants.
_____

ECF Case

Case No.

**COMPLAINT**

      Plaintiff, Donald Teter, by his attorneys, McBrien Law PC, for his Complaint against defendants, Misonix Inc., and Sharon Klugewicz (collectively "defendants") respectfully allege as follows:

<strong>NATURE OF ACTION</strong>

      1.     This is an action for damages against defendant, Misonix, for interfering with, restraining and denying plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §2615 ("FMLA") and against defendants, Misonix and Sharon Klugewicz, for failure to reasonably accommodate plaintiff's disability and for disability discrimination in violation of the New York State Human Rights Law, Executive Law § 296, *et seq*., (NYSHRL).

<strong>JURISDICTION AND VENUE</strong>

      2.     The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over related claims brought under NYSHRL.

      3.     Venue in this Court is proper in that defendants maintain principal offices in this District.

## The Parties

4.      Plaintiff, Donald Teter ("plaintiff" or "Mr. Teter"), is male and a citizen of the United States.

5.      During all times relevant, Mr. Teter was and still is a resident of the State of New York, County of Suffolk.

6.      During all times relevant, Mr. Teter was an "employee" as defined by the FMLA and NYSHRL.

7.      At all times relevant, defendant, Misonix Inc. ("Misonix") is and was a company incorporated in Delaware, headquartered in the State of New York, County of Nassau with its principal place of business located at 1938 New Highway, Farmingdale NY 11735.

8.      At all times relevant, Misonix employed more than 50 employees and was and still is an "employer" as defined by the FMLA and NYSHRL.

9.      Misonix is a specialty manufacturer and marketer of ultrasonic medica devices used for the removal of various hard and soft tissues.

10.      At all times relevant, defendant, Sharon Klugewicz ("Klugewicz"), resides and resided in the State of New York and was employed by Misonix.

11.      In 2018, and up until plaintiff's termination, Sharon Klugewicz was the Chief Operating Officer of Misonix.

12.      In 2018, and up until plaintiff's termination, Sharon Klugewicz was Plaintiff's manager.

13.      In 2018, and up until plaintiff's termination, Sharon Klugewicz directed and managed Joseph Gigante, the Director of Human Resources at Misonix.

**Facts**

14.     On or about May 7, 2018, Misonix hired Mr. Teter as a full-time Materials Manager.

15.     At all relevant times, Mr. Teter worked at Misonix's headquarters at 1938 New Highway, Farmingdale, NY 11735.

16.     During Mr. Teter's tenure at Misonix, he received positive performance feedback from management, which always indicated he was meeting or exceeding expectations.

17.     During Mr. Teter's tenure at Misonix he did not receive any negative reviews or formal complaints regarding his job performance at Misonix.

18.     On or about, April 15, 2019, before going to work, Mr. Teter experienced severe pain which required him to stay home from work and visit his primary care physician.

19.     On or about April 15, 2019 Mr. Teter left voicemail messages for Sharon Klugewicz, his supervisor and company COO,  and Joseph Gigante, the Director of Human Resources, notifying each of them that he would be out of the office due to a medical issue.

20.     On or about April 16, 2019, Mr. Teter's physician determined he should stay out of work until April 18, 2019 and provided Mr. Teter with a written notice stating the same.

21.     On or about April 16, 2019, and again on April 17, 2019, Mr. Teter communicated his physician's April 16, 2019 determination to Mr. Gigante.

22.     On April 17, 2019, due to plaintiff's continuing pain, he returned to his doctor. His doctor indicated he should remain out of work until April 24, 2019.

23.     On or about April 17, 2019, plaintiff communicated his medical condition to COO Klugewicz and Mr. Gigante and emailed them both a copy of his then most current physician's note.

24.     On April 23, 2019 plaintiff visited an orthopedic physician to address his ongoing back pain, and pain management options.

25.     Due to his ongoing back pain, Mr. Teter's orthopedic physician indicated plaintiff should remain away from work until May 7, 2019.

26.     On April 23 plaintiff updated Ms. Klugewicz and Mr. Gigante and provided them with a note from his orthopedic physician stating a return to work date of May 7, 2020.

27.     On April 24, 2019, plaintiff received notice from Mr. Gigante, stating that Misonix would accommodate plaintiff's medical leave until May 7, 2019.

28.     While plaintiff was out on medical leave, he continued to communicate with his colleagues in the department of materials management at Misonix via email and telephone whenever needed.

29.     On April 26, 2019, plaintiff went to the hospital emergency department because his back pain was unbearable.

30.     The pain persisted and plaintiff returned to the hospital emergency department on May 1, 2019, and was admitted to the hospital.

31.     On May 2, 2019, plaintiff communicated to COO Klugewicz and Mr. Gigante, that plaintiff had been admitted to the hospital due to his severe back pain, and that surgery would be required.

32.     During Mr. Teter's stay in the hospital, a letter dated May 2, 2019 was mailed to his home address, requesting that by May 9, 2019 he provide medical documentation regarding the expected duration of his absence from work at Misonix.

33.     Plaintiff's invasive surgery was performed on Friday, May 3, 2019.

34.     On May 5, 2019, plaintiff emailed COO Klugewicz and Mr. Gigante, notifying them that he had undergone surgery and would know more on Tuesday, May 7, 2019, regarding his condition.

35.     On Monday, May 6, 2019, on behalf of the plaintiff, the plaintiff's fiancée phoned Misonix and spoke to Joe Gigante and asked Mr. Gigante what, if anything, Misonix needed from the Mr. Teter, as Mr. Teter was still in the hospital.

36.     During plaintiff's fiancée's May 6, 2019, phone call, she asked Mr. Gigante about Family and Medical Leave (FMLA). Mr. Gigante said nothing was required at that time.

37.     On May 6, 2019, the Director of Human Resources at Misonix told plaintiff's fiancée that a disability claim is what the plaintiff should file, not FMLA.

38.     During plaintiff's medical leave and surgery and thereafter, Family Medical Leave was never offered by defendants or discussed as a possible option, despite plaintiff's fiancée's specific request for it on his behalf.

39.     Plaintiff worked in excess of 1,250 hours during the 12 months he was employed by defendants.

40.     On May 7, 2019, plaintiff was discharged from the hospital.

41.     On May 9, 2019, plaintiff went online and completed disability paperwork, as requested by the Director of Human Resources at Misonix, and then notified the defendant via the Director of Human Resources email, that the paperwork had been completed.

42.     Later that day, on May 9, 2019, having taken less than four weeks of medical leave, plaintiff received an email from the defendant providing notification of his termination from Misonix.

43.     The termination notice stated that plaintiff refused to provide Misonix with medical

5

documentation, and "… failed to cooperate in this process with us."

44.     At no time prior to his termination on May 9, 2019, did any manager from Misonix indicate to Mr. Teter that he was not cooperating or providing the information required for his medical leave.

45.     On May 9, 2019, plaintiff received a return to work note from his surgeon stating he could return to work on May 13, 2019, subject to further medical evaluation, however he received the termination email before he obtained the return to work note.

46.     Upon his termination from Misonix, his employer-sponsored health insurance benefits terminated, and he was forced to pay for COBRA continuation of coverage benefits.

47.     Plaintiff's medical condition, lumbar herniated disc, severe lumbar radiopathy, and spinal instability, qualified as a serious health condition as defined by the FMLA, in that he required inpatient care in a hospital as well as continuing treatment by a health care provider.

48.     Plaintiff suffers and at all relevant times suffered from a disability, namely lumbar herniated disc, severe lumbar radiopathy, and spinal instability, which impairs his ability to walk and stand, and required surgery and recovery time to ameliorate the condition.

49.     Plaintiff requested medical leave as a reasonable accommodation of his disability.

50.     Plaintiff was able to perform the essential functions of his position after the reasonable accommodation of leave time to recover from an acute flare up of his disability.

51.     By terminating Mr. Teter while he was on medical leave, two days after he was discharged from the hospital, defendants intentionally interfered with Mr. Teter's rights under the FMLA.

52.     By terminating Mr. Teter while he was on medical leave, two days after he was discharged from the hospital, defendants retaliated against Mr. Teter for exercising his rights under

the FMLA.

53.     Defendants failed to reasonably accommodate plaintiff's disability and denied plaintiff's request for a reasonable accommodation of a brief medical leave, and instead terminated him in violation of the NYSHRL.

54.     By terminating Mr. Teter while he was on medical leave, two days after he was discharged from the hospital, defendants discriminated against Mr. Teter based on his disability.

55.     By terminating Mr. Teter while he was on medical leave, two days after he was discharged from the hospital, defendants retaliated against Mr. Teter for requesting a reasonable accommodation.

56.     Misonix COO, Klugewicz, personally participated in the discriminatory conduct and occupied a supervisory position with the power over plaintiff to do more than carry out personnel decisions made by others.

## FIRST CLAIM FOR RELIEF AGAINST MISONIX:
## FMLA INTERFERENCE

57.     Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

58.     Defendant Misonix failed to adequately apprise plaintiff of his rights under the FMLA.

59.     Defendant Misonix interfered with plaintiff's FMLA rights by terminating plaintiff without regard for his rights under the FMLA.

60.     As a result of defendants' willful violation of the FMLA, plaintiff sustained substantial losses in earnings and other employment benefits and future pecuniary losses .

**SECOND CLAIM FOR RELIEF AGAINST MISONIX:**
**FMLA RETALIATION**

61.     Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

62.     Defendant Misonix failed to adequately apprise plaintiff of his rights under the FMLA.

63.     Defendant Misonix interfered with plaintiff's FMLA rights by retaliating against plaintiff by terminating him when he took medical leave for a serious health condition, without regard for his rights under the FMLA.

64.     As a result of defendants' willful violation of the FMLA, plaintiff sustained substantial losses in earnings and other employment benefits and future pecuniary losses.

**THIRD CLAIM FOR RELIEF AGAINST MISONIX AND KLUGEWICZ:**
**DISCRIMINATION BASED ON DISABILITY UNDER THE NYSHRL**

65.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of the Complaint with the same force and effect as if fully alleged herein.

66.     By reason of the foregoing, plaintiff, because of his disability, was denied terms and conditions of employment; and was discharged by defendants in violation of the NYSHRL, Executive Law § 296, *et seq*.

67.     Defendants failed to offer a reasonable accommodation of plaintiff's disability, despite his timely, reasonable request for medical leave.

68.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of his disability under the NYSHRL, Executive Law § 296, *et seq*.

69.     Plaintiff, because he suffered from a disability and took medical leave, was subject to discrimination and retaliation in that he was denied terms and conditions of employment and

was discharged by defendants in violation of the NYSHRL, Executive Law § 296, *et seq*.

70.     As a result of defendants' willful, knowing and intentional discrimination, plaintiff sustained and continues to sustain substantial losses in salary and other employment benefits and suffered and continues to suffer humiliation, and mental distress and anguish.

**FOURTH CLAIM FOR RELIEF AGAINST AGAINST MISONIX AND KLUGEWICZ: RETALIATION UNDER THE NYSHRL**

71.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of the Complaint with the same force and effect as if fully alleged herein.

72.     By reason of the foregoing, plaintiff, because of his disability and request for reasonable accommodation, was denied terms and conditions of employment; and was discharged by defendants in violation of the NYSHRL, Executive Law § 296, *et seq*.

73.     Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff on the basis of his disability and his request for a reasonable accommodation under the NYSHRL, Executive Law § 296, *et seq*.

74.     Plaintiff, because he suffered from a disability and took medical leave, was subject to retaliation in that he was denied terms and conditions of employment and was discharged by defendants in violation of the NYSHRL, Executive Law § 296, *et seq*.

75.     As a result of defendants' willful, knowing and intentional retaliation, plaintiff sustained and continues to sustain substantial losses in salary and other employment benefits and suffered and continues to suffer humiliation, and mental distress and anguish.

**FIFTH CLAIM FOR RELIEF AGAINST MISONIX AND KLUGEWICZ: FAILURE TO REASONABLY ACCOMMODATE DISABILITY UNDER THE NYSHRL**

76.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs of the Complaint with the same force and effect as if fully alleged herein.

77.     By reason of the foregoing, plaintiff, because he was denied a reasonable accommodation, was denied terms and conditions of employment; and was discharged by defendants in violation of the NYSHRL, Executive Law § 296, *et seq*.

78.     Defendant's acts, practices, and policies described herein constitute a failure to reasonably accommodate plaintiff on the basis of his disability and his request for a reasonable accommodation under the NYSHRL, Executive Law § 296, *et seq*.

79.     Plaintiff, because he suffered from a disability and was denied medical leave, was subject to a failure to reasonably accommodate in that he was denied terms and conditions of employment and was discharged by defendants in violation of the NYSHRL, Executive Law § 296, *et seq*.

80.     As a result of defendants' willful, knowing and intentional failure to provide plaintiff a reasonable accommodation, plaintiff sustained and continues to sustain substantial losses in salary and other employment benefits and suffered and continues to suffer humiliation, and mental distress and anguish.

**WHEREFORE**, plaintiff respectfully requests that the Court enter judgment in plaintiff's favor and against defendants, containing the following relief:

A.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

B.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including

but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

   C.  An award of liquidated damages;

   D.  An award of punitive damages;

   E.  An award of costs that plaintiff has incurred in this action, as well as plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

   F.  Such other and further relief as the Court may deem just and proper.


Dated: Hauppauge, New York
   April 12, 2021

         Attorneys for Plaintiff

     By:     /s
        P. Bruce McBrien, Esq.
        McBrien Law PC
        140 Fell Court, Suite 305
        Hauppauge, NY 11788
        (631) 403-0335
        bruce@mcbrienlaw.com